HAMILTON, Circuit Judge,
concurring in part and dissenting in part.
I concur in all of the court’s opinion but the part that affirms the district court’s grant of summary judgment in favor of Roger Kercher (Kercher) with respect to *925 Sadonya Costello’s (Sadonya) claim alleging intentional infliction of emotional distress under Nebraska common law. With respect to this claim, the court rejects it, concluding that, while “unprofessional, intemperate, and unworthy of one entrusted with the responsibility of educating students,” ante at 924, Kercher’s conduct was not so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is not to be regarded as atrocious and utterly intolerable in a civilized community. The court’s decision on this claim is not only unfortunate for Sadonya and our Nation’s public schools, but, more importantly, it is not grounded upon a reasonable interpretation of the record in this case. Accordingly, because I would vacate the district court’s grant of summary judgment in favor of Kercher with respect to Sadonya’s claim of intentional infliction of emotional distress under Nebraska common law and remand for further proceedings, I dissent in part.
I
To fully appreciate the unquestionably deplorable nature of Kercher’s conduct, a recitation of the relevant facts is necessary.
On August 2, 1996, Sadonya celebrated her thirteenth birthday. Approximately one month later, Sadonya began attending the seventh grade at Mitchell High School, a school completely new to her. Sadonya initially enrolled in band class, taught by Kercher, wherein she played the clarinet. Kercher knew that Sadonya was a new student at Mitchell High School because she had introduced herself to Kercher as such during her tour of Mitchell High School prior to the start of the school year.
For Sadonya, her seventh grade year began reasonably well. She earned passing grades for the first half of the first semester, was very social, and seemed to be well accepted by her peers. By the beginning of the second half of the first semester, however, Sadonya began to have performance problems in all her classes. With respect to band class, Sadonya asked Kercher for after-school help on a regular basis. For a while he complied with her requests without complaint. Then, every day for approximately one month prior to Christmas vacation, Kercher told Sadonya in front of her fellow band classmates that she was retarded, stupid, and needed to go to a school where retarded people were taught. Kercher almost always made these humiliating statements in response to Sandoya’s continued requests for after-school help with her clarinet.
On one occasion, Kercher snapped at Sadonya in response to a request for after-school help: “If you’re so retarded, you don’t need to be in this classroom.” (J.A. 329). Furthermore, during this same time period, Kercher threw Sadonya’s band notebook (that he had just been grading) at her while calling her “stupid” and declaring that if she “could not do any better than that, then he didn’t want somebody like [her] in his class.” (J.A. 330). The notebook hit Sadonya in the face. This notebook incident also took place in front of Sadonya’s fellow band classmates.
Kercher’s crass behavior toward Sadon-ya resumed after Christmas vacation. For example, during a school basketball game at which the school band performed, Kercher told Sadonya that he was going to kick her out of the band because she was “too stupid.” (J.A. 347). Moreover, Kercher’s statements referring to Sadonya as stupid and retarded in front of her classmates continued on a frequent basis during the entire nine weeks that Sadonya was enrolled in Kercher’s music appreciation class, which began in late ’ January 1997, despite the fact that Kercher learned *926 on January 22, 1997 that Sadonya had recently begun mental health counseling.
Over the course of time, Kercher’s cruel behavior toward Sadonya caused her extreme emotional distress. On January 27, 1997, Sadonya reported to her treating psychiatrist, Dr. Mark Scanlan, M.D. (Dr. Scanlan), that she had particular problems at school with her band teacher being mean towards her, and as a result, she had been more moody and tearful. Dr. Scan-lan reported that Sadonya felt quite stressed by the school situation. He diagnosed her with major depression.[6]
On April 2, 1997, Dr. Scanlan examined Sadonya again. His notes reflect that she continued to have trouble with teachers, particularly Kercher. His notes from this visit further state: “She states she tends to rush though her work and is otherwise distracted and anxious about school problems. She also appears somewhat more depressed lately with decreased mood, [and] variable sleep pattern.” (J.A. 173). Again, he diagnosed her with major depression and ordered her to continue individual mental health counseling.
By early May 1997, Sadonya’s mental and emotional state had reached an all time low with her becoming suicidal. Thus, on May 7, 1997, Dr. Scanlan again examined Sadonya and diagnosed her with major depression. His notes reflect he felt that Sadonya withdrawing from the remainder of the school year at Mitchell High School was “important for her overall improvement” and Sadonya’s treatment at school “was certainly a cause of her recent decompensation.” (J.A. 170). On the same day, Dr. Scanlan sent a letter to Mitchell High School stating that if Sadon-ya “returns to school at this point her situation would only worsen, both physically and mentally.” (J.A. 145).
II
To recover for intentional infliction of emotional distress under Nebraska common law, Sadonya must prove the following elements by a preponderance of the evidence: “(1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.” Brandon v. County of Richardson, 261 Neb. 636, 624 N.W.2d 604, 620-21 (2001). The evidence in the present case, when viewed in the light most favorable to Sadonya, is sufficient for a reasonable jury to find in her favor with respect to each of these elements, and thus, the district court’s grant of summary judgment in favor of Kercher was, in my opinion, reversible error.
A reasonable jury could infer that Kercher intended to inflict emotional distress on Sadonya from the nature of his statements to her under all the facts and circumstances of this case. In determining whether a defendant’s conduct meets the second element of an intentional infliction of emotional distress claim, the extreme and outrageous element, all of the facts and circumstances of the particular case must be considered. Id. at 621. For example, the relationship between the parties is an important factor to be considered because the extreme and outrageous char *927 acter of the defendant’s conduct may arise from the defendant’s abuse of a position of power or trust, or a relation with the plaintiff, which gives the defendant actual or apparent authority over the plaintiff, or power to affect the plaintiffs interests. Id.; Restatement (Second) of Torts (Restatement) § 46 cmt. e (1965). Another important factor to be considered in determining whether a defendant’s conduct meets the extreme and outrageous element is whether the defendant knew the plaintiff was particularly susceptible or vulnerable to emotional distress. Brandon, 624 N.W.2d at 621; Restatement § 46 cmt. f “[Cjonduct which might otherwise be considered merely rude or abusive may be deemed outrageous when the defendant knows that the plaintiff is particularly susceptible to emotional distress.” Brandon, 624 N.W.2d at 621. Generally, the extreme and outrageous element is met when recitation of the facts to an average member of the community would arouse his resentment against the defendant, and lead such member “to exclaim, ‘Outrageous!’ ” Restatement § 46 cmt. d.
There is no doubt that recitation of the facts in the present case, as set forth above, to an average member of the Nebraska community would arouse resentment against Kercher and lead such member of the community to exclaim “Outrageous!” In his capacity as Sadon-ya’s teacher, Kercher intentionally attempted to publicly humiliate Sadonya, a child, on the topic of the inadequacy of her intelligence, knowing that she would be particularly susceptible to resulting emotional distress given her young age, the fact that she was a new student at Mitchell High School, and that she was already doing poorly in his class. Additionally, as of January 22, 1997, Kercher knew that Sadonya required the services of a mental health counselor. Under these facts, I cannot say, as a matter of law, that Kercher’s conduct was not so outrageous as to exceed the bounds of decent society. Cf. Baird v. Rose, 192 F.3d 462 (4th Cir.1999) (holding that plaintiff stated cause of action under Virginia common law for intentional infliction of emotional distress against her seventh grade show choir teacher where plaintiff alleged that the teacher, in her capacity as the plaintiffs teacher, intentionally attempted to humiliate the plaintiff in front of her classmates, knowing that plaintiff was suffering from clinical depression). Sadonya has met the second element of her intentional infliction of emotional distress claim against Kercher. Brandon, 624 N.W.2d at 620-21.
Sadonya has also met her burden of proffering sufficient evidence to survive summary judgment with respect to the last element of her intentional infliction of emotional distress claim — that Kercher’s conduct caused Sadonya emotional distress so severe that no reasonable person should be expected to endure it. Id. That Sadonya suffered extreme emotional distress, including major depression and thoughts of suicide, as the result of Kercher’s conduct is well documented in Sadonya’s medical records. Indeed, Kercher’s conduct left Sadonya in such a fragile emotional state that she was not able to finish out the short remaining period in the school year.
Ill
In sum, I concur in the court’s opinion except that I would allow Sadonya’s intentional infliction of emotional distress claim against Kercher to go to a jury. If all of Sadonya’s allegations about Kercher’s conduct are true, society would immeasurably benefit from the imposition of civil liability upon such conduct.

. Following a psychiatric examination by Dr. Scanlan of Sadonya on December 19, 1996, Dr. Scanlan reported in his notes that although issues of depression suffered by Sa-donya needed to be addressed with an individual therapist, he ruled out major depression at that time.